UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JAMES McGAUGHEY, SR., | ) No. ED CV 08-01706-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

        developed the record;

2. Whether the ALJ properly determined that Plaintiff's condition meets or equals a Listing;

3. Whether the ALJ properly considered Plaintiff's testimony; and

4. Whether the ALJ properly considered the mental and physical demands of Plaintiff's past relevant work. (JS at 2-3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**THE ALJ HAD A DUTY TO DEVELOP THE RECORD, BUT DID NOT ERR**

**IN HIS DETERMINATION THAT PLAINTIFF'S CONDITION**

**DOES NOT MEET OR EQUAL A LISTING**

Addressing Plaintiff's first two issues, he contends that the absence in the original record of a January 31, 2006 consultative examination ("CE") by Dr. Taylor, a clinical psychologist, rendered the ALJ unable to properly analyze Dr. Taylor's findings. Plaintiff contends that the ALJ should have developed the record by obtaining and addressing Dr. Taylor's CE report. Related to this is Plaintiff's second issue, in which he argues that the ALJ failed to find that he meets Listing 12.05 (mental retardation). (See 20 C.F.R. Part 404, subpart P, Appendix I, section 1205C.)

As to the first issue, Dr. Taylor's CE report is in the supplemental record at AR 164-168. Accepting Plaintiff's contention that the ALJ failed to review Dr. Taylor's report, and should have

obtained it, the Court notes that the ALJ did examine the following psychiatric evaluations:

    1.   Dr. Kikani, on June 15, 2006 (AR 143-146);

    2.   Dr. Smith, on April 19, 2007 (AR 123-129).

Further, Dr. Kikani had reviewed Dr. Taylor's report, and essentially concurred with his findings. (AR 146.) Dr. Smith, on the other hand, found a lesser level of impairments (as will be discussed below) than did Dr. Taylor.

Dr. Taylor diagnosed that Plaintiff had methamphetamine dependence in early remission, marijuana abuse, and borderline intellectual functioning. (AR 168.) He found mild impairment in Plaintiff's ability to understand, remember or complete job instructions; mild impairment in adapting to day-to-day work activities; and moderate impairment both in his ability to maintain attention, concentration, persistence and pace, and in his ability to interact with supervisors, coworkers, and the public. (AR 168.) The ALJ found only mild restrictions in Plaintiff's ability to maintain attention, concentration, persistence and pace, and in his ability to interact with supervisors, coworkers, and the public. (AR 14-15.)[1] As to Dr. Kikani's opinion, his concurrence with Dr. Taylor's opinion is, again, reflected in his report (see AR at 146), and therefore, to the extent that Dr. Kikani found moderate difficulties in Plaintiff's ability to relate and interact with supervisors, coworkers and the public, and with concentration on persistence, and pace, his opinion

---

[1] In this regard, the Commissioner is incorrect in his assertion that Dr. Taylor's opinion is consistent with the functional limitations found by the ALJ in his decision. (See JS at 5.)

1  is, to that extent, inconsistent with that of the ALJ.
2       This leaves Dr. Smith's evaluation of April 19, 2007. Dr. Smith
3  found no impairment in Plaintiff's ability to understand, remember or
4  complete simple commands, and mild impairment in the other four areas.
5  (AR 129.)
6       Finally, the State Agency physician, who reviewed the medical
7  record, concluded that, consistent with Dr. Smith's findings,
8  Plaintiff has no impairment in his ability to understand, remember or
9  complete simple commands, and only mild impairments in the remaining
10 areas of mental functioning. (AR 105-106, 109-122.)
11      The issue, therefore, is whether the ALJ correctly assessed
12 Plaintiff's mental impairments according to applicable regulation.
13 The ALJ was tasked with evaluating three distinct opinions, each based
14 on independent testing, rendered by three different psychiatrists:
15 Drs. Kikani, Smith, and Taylor.  He obviously opted to adopt Dr.
16 Smith's findings rather than Dr. Kikani's, and there is no evidence
17 that he ever reviewed Dr. Taylor's report.
18      The pertinent question, therefore, is whether the ALJ erred in
19 not developing the record so as to be able to examine Dr. Taylor's
20 report. As it is, the ALJ chose to adopt Dr. Smith's findings in lieu
21 of Dr. Kikani's, and the apparent basis for this choice, as set forth
22 in the decision, is that Dr. Smith's April 2007 report is more current
23 than Dr. Kikani's 2006 psychological test. (See AR at 15.)  But, this
24 reasoning does not adequately support the ALJ's choice to reject the
25 conclusions of one examining physician in favor of another's,
26 particularly in view of the fact that Dr. Kikani's report was prepared
27 based upon an examination that occurred less than ten months before
28 Dr. Smith's, and Dr. Taylor's report only predated the others by

approximately a year. The Court does not perceive any apparent staleness in the reports and examinations of Drs. Taylor and Kikani which would serve as a reasonable basis to simply reject their findings on significant issues of mental impairment. A mild impairment is far from the same as a moderate impairment, and in the latter case, having moderate limitations in various areas of mental functioning may, as the Court will discuss, ultimately effect the availability of jobs which a claimant can do.

Where examining physicians render conflicting opinions, each based upon independent medical examinations, the requirements are clear. In Lester v. Chater, 81 F.3d 821, 829-830 (9th Cir. 1995), the Ninth Circuit discussed the manner in which the adjudicator must address the opinions of examining physicians, and of non-examining physicians:

> "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)."

Therefore, the issue is simply whether the ALJ provided specific and legitimate reasons supported by the record for rejecting Dr. Kikani's (and, therefore, Dr. Taylor's) conclusions that Plaintiff has moderate limitations in certain areas of mental functioning. The Court cannot accept that "most recent examination prevails" constitutes a specific and legitimate reason to reject slightly older examinations and conclusions. The error would appear to be compounded here because two qualified mental health professionals, Dr. Kikani and Taylor, both observed moderate mental limitations in two areas of functioning that Dr. Smith did not observe. This error in and of itself necessitates a remand for reconsideration of these issues at a new hearing.[2]

As to Plaintiff's argument that the ALJ erred in not finding that he meets a Listing, the Court does not find error. Plaintiff's argument is that he has established that he meets or equals Listing 12.05C, which requires findings of a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment which imposes an additional and significant work-related limitation of function. First, as the Commissioner notes, in order to meet a Listing for Mental Retardation, Plaintiff must first establish a deficit in his adaptive functioning initially manifested before age 22. There is no evidence in the record that this evidence has been produced. More importantly, there is no evidence that Plaintiff has a physical or other mental impairment which imposes additional and significant work-related limitations, as required by the second prong

---

[2] These factors relate to assessment of the severity of the mental impairment, and are distinct from determination of residual functional capacity at Step Four. The former is what an individual cannot do, while the latter is what he is capable of doing.

of Listing 12.05C. Plaintiff's argument that the existence of a mood disorder satisfies this requirement is erroneous, because the fact that a claimant has a severe impairment does not equate to a Listing level or equivalent impairment. See <u>Nieves v. Secretary of Health and Human Services</u>, 775 F.2d 12, 14 (1st Cir. 1985).

## II
**THE ALJ'S CREDIBILITY ASSESSMENT IS BASED ON INSUFFICIENT REASONS**

In his decision, the ALJ depreciated Plaintiff's credibility as to his subjective symptoms, finding that they are "not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (AR 16.) Looking to the language of the decision, it is difficult to find many reasons to support this conclusion. The Commissioner finds a number of legitimate reasons, including the following:

1. Plaintiff does not have a history of psychological treatment, counseling, or medication commensurate with his alleged disabling psychological symptoms. (JS at 19, citing AR 16.)

2. While Plaintiff alleged suicidal ideation at the hearing, the ALJ noted that there is no documentation in the medical evidence to support the allegation. (JS at 19, citing AR 36, 38-39.)

3. While Plaintiff alleged suicidal ideation at the hearing, he told each of the three consultative examiners, Drs. Taylor, Smith and Kikani that he did not have such thoughts. (JS 19, citing AR 124, 143, 165.)

4. While Plaintiff stated at the hearing that he could not read

1         or write, the consultative examiner noted that he filled out
2         a four-page questionnaire at his January 31, 2006
3         examination. (JS 19, citing AR at 164.)
4    5.   Plaintiff's aggravating factor of a history of drug and
5         alcohol abuse appears to be in remission by his own
6         testimony.
7    6.   Plaintiff told all three consultative examiners that he is
8         capable of performing normal activities of daily living. (JS
9         at 20.)

The applicable law regarding credibility assessment is based both on regulation and statute. Subjective complaints of pain or other symptomology in excess of what an impairment would normally be expected to produce are subject to the credibility assessment of an ALJ. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001). An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). When determining credibility, the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also, Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001). In order to find that a claimant's subjective complaints are not credible, an ALJ "must specifically make findings that support this conclusion," Bunnell, 947 F.2d at 345, and provide "clear and convincing reasons." Rollins, 261 F.3d at 857; see also Varney v. Secretary of Health & Human Services, 846 F.2d 581, 584 (9th Cir. 1988) (requiring the ALJ to put forward

"specific reasons" for discrediting a claimant's subjective complaints).

The absence of objective evidence to corroborate a claimant's subjective complaints, however, does not by itself constitute a valid reason for rejecting her testimony. Tonapetyan v. Halter, 242 F.3d at 1147. However, weak objective support can undermine a claimant's subjective testimony of excess symptomology. See e.g., Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

Implementing regulations prescribe factors which should be considered in determining credibility as to self-reported pain and other symptoms. In 20 C.F.R. §404.1529(c)(3), the factors to be considered are specified to include a claimant's daily activities ("ADL"); the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken; treatment received; and measures taken to relieve pain.

The regulations also specify that consideration should be given to inconsistencies or contradictions between a claimant's statements and the objective evidence:

> "We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements

```
           by your treating or nontreating source or other persons
           about how your symptoms affect you."
(20 C.F.R. §404.1529(c)(4).)
```

While the Commissioner has carefully searched the record for possible reasons which would support a decreased credibility finding, the problem is that most of the reasons cited by the Commissioner in the JS are not contained in the decision, and are therefore not cognizable on review. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). For example, there is nothing in the decision which indicated that the ALJ relied upon the lack of a commensurate history of psychological treatment, counseling or medication to corroborate Plaintiff's complaints. In fact, a fair reading of the decision indicates just the opposite. While the ALJ acknowledged that Plaintiff alleged he has been unable to work because of his mental impairments and fluctuating mood disorder, he responded by stating that, "if the [Plaintiff] receives counseling, treatment, and/or medication, he may very well become another productive member of society." (AR 16.) Indeed, as the Court has noted, two of the three consulting mental health professionals found moderate impairments in relevant areas of mental functioning, a matter which must be addressed on remand.

With regard to Plaintiff's activities of daily living ("ADL"), again, the Commissioner's argument that this issue was relevant to the ALJ's credibility termination is simply not found in the decision. In any event, the fact that Plaintiff may once have sold newspapers "on the corner," (AR 125) does not constitute a level of daily activities sufficient to support a depreciation in credibility, even if it were

found in the decision, which it is not.  The same goes for allegations of suicidal ideation, which, contrary to the Commissioner's argument, does not form part of the ALJ's credibility determination.  The same goes, again, for the Commissioner's argument that Plaintiff stated at the hearing that he could not read or write, in contrast to Dr. Taylor's notation that Plaintiff completed a four-page intake history questionnaire form.[3]

Finally, the Court will not address Plaintiff fourth issue in any detail.  Plaintiff asserts that the ALJ did not properly consider the mental and physical demands of his past relevant work.  Since Plaintiff's mental RFC must be reevaluated on remand, it will be necessary, after that determination is made, to both evaluate the mental and physical demands of Plaintiff's past relevant work according to proper standards, and to then determine whether Plaintiff's RFC enables him to perform this work.

//

---

[3] This part of Dr. Taylor's report does not seem sufficient, in any event, to contradict Plaintiff's claims that he could not read or write.  It is seemingly undisputed that Plaintiff has a full scale IQ of 65, and reads at a third grade level, spells at a second grade level, and does arithmetic at a third grade level. (AR 128.) Plaintiff's own evaluation that he does not know how to read or write may, in fact, be simply his own psychological self-perception that equates a third grade level of reading with an inability to read. Moreover, it is difficult to conceive that a person with such limited abilities in reading and writing could, by himself, fill out a four-page medical questionnaire prior to a psychiatric consultative examination.
The Court need not further discuss this matter, because it is clear that the credibility evaluation is insufficient and incomplete. The Court declines to order that Plaintiff be accorded full credibility for his symptoms at the rehearing, in view of the incompleteness of the analysis.  The ALJ will make this determination de novo.

For the foregoing reasons, this matter will be remanded to the Commissioner for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: September 30, 2009

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE